UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

SALIMA MCCREE; SALIMA MCCREE AS THE ADMINISTRATRIX OF THE ESTATE OF MATTHEW MCCREE,

*Plaintiffs*,

– against –

THE CITY OF NEW YORK; HEATHER LEYKAM; MELINDA ALGARIN; ELIZABETH SANNA; *and* UMBERTO P JEAN-LOUIS,

*Defendants*.

**MEMORANDUM & ORDER**
21-cv-02806 (NCM) (LKE)

---

**NATASHA C. MERLE**, United States District Judge:

Plaintiff Salima McCree brings this Section 1983 action on behalf of herself and her late husband's estate, alleging, among other things, that defendants violated plaintiffs' right to a fair trial, due process rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, and are liable for malicious prosecution. *See generally* Amended Complaint ("AC"), ECF No. 51. The parties bring cross-motions for summary judgment on plaintiffs' claims.[1] For the reasons stated below, plaintiffs' motion is DENIED and defendants' motion is GRANTED.

---

[1]    Hereinafter, the Court refers to Plaintiffs' Memorandum in Support of Summary Judgment, ECF No. 77, as "Pls. Mot."; Defendants' Opposition, ECF No. 88, as "Defs. Opp'n"; Plaintiffs' Reply in Support, ECF No. 89, as "Pls. Reply"; Defendants' Memorandum in Support of Summary Judgment, ECF No. 82, as "Defs. Mot."; Plaintiffs' Opposition, ECF No. 83, as "Pls. Opp'n"; Defendants' Reply in Support, ECF No. 86, as "Defs. Reply"; Defendants' 56.1 Statement, ECF No. 82-1, as "Defs. 56.1"; Plaintiffs' 56.1 Counter-statement, ECF No. 83-1, as "Pls. Counter 56.1"; and Plaintiffs' 56.1 Statement, ECF No. 79, as "Pls. 56.1."

## BACKGROUND

Plaintiffs are the parents of two children with disabilities. Pls. Counter 56.1 ¶¶ 8–9. The children are referred to throughout this Memorandum and Opinion as KlM and KdM, or "the children." Pls. Counter 56.1 ¶¶ 7–9. During the 2015–2016 school year, KlM and KdM were enrolled as students at P53K, which is a Department of Education District 75 school for children with disabilities. Pls. Counter 56.1 ¶¶ 2, 7.[2] Defendant Heather Leykam served as the principal of P53K during the relevant period, and defendant Elizabeth Sanna was employed as the school's psychologist. Pls. 56.1 ¶¶ 3, 6.

---

[2]    All facts are undisputed unless otherwise indicated. Local Civil Rule 56.1(a) requires the moving party to submit a "short, and concise statement, in numbered paragraphs of the material facts as to which the moving party contends there is no genuine issue to be tried." L. Civ. R. 56.1(a). The nonmoving party must then submit a "correspondingly numbered paragraph admitting or denying, and otherwise responding to, each numbered paragraph in the statement of the moving party[.]" L. Civ. R. 56.1(b). "A nonmoving party's failure to respond to a Rule 56.1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible." *T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 417–18 (2d Cir. 2009).

Plaintiffs correctly note that defendants' failure to respond to plaintiffs' Rule 56.1 statement of undisputed facts could result in a grant of summary judgment to the moving party. Pls. Reply 6–9. However, summary judgment may only be granted where Rule 56's other requirements are met such that the undisputed facts presented by the moving party entitle that party to judgment as a matter of law. *T.Y.*, 584 F.3d at 417–18. Because defendants have not filed a response, the Court deems those facts in plaintiffs' 56.1 statement to be admitted and will rely on them in deciding the cross-motions. However, the Court will only deem those facts admitted to the extent that they do not overlap with those facts identified in defendants' Rule 56.1 statement and responded to by plaintiffs. *See RL 900 Park, LLC v. Ender*, No. 18-cv-12121, 2021 WL 738705, at * 1 (S.D.N.Y. Feb. 25, 2021) (accepting the facts as stated in defendant's uncontested statement of fact "unless contradicted expressly by the content of [plaintiff's] previous Local Rule 56.1 filings"); *Roches-Bowman v. Evans*, No. 21-cv-05572, 2024 WL 4252572, at *1 n.2 (S.D.N.Y. Sept. 19, 2024) (deeming facts admitted in defendant's supplemental 56.1 statement of fact where they do not overlap with the facts in defendant's 56.1 statement to which plaintiff *did* respond). Additionally, the Court will not deem those assertions in plaintiffs' 56.1 statement to be admitted where they contain legal argument or conclusions. *Id.*

At some point, plaintiffs "began to ask questions about why their children" were coming home from school "with marks." Pls. 56.1 ¶ 3. Mrs. McCree called 311 to complain about the school and that the children would come home from school with scars, marks, or bruises. Pls. 56.1 ¶ 4. Plaintiffs do not provide a date on which the 311 call was made, but note that it was made before the neglect proceedings underlying this action were initiated. Pls. 56.1 ¶ 3. At some point, Mrs. McCree spoke with defendant Leykam who asked Mrs. McCree if she had reported the school to 311. Pls. 56.1 ¶ 5.

Then, on March 15, 2016, the Administration for Children's Services ("ACS") received a report with allegations accusing plaintiffs of educational neglect and inadequate guardianship. Defs. 56.1 ¶¶ 21–22.[3] ACS thereafter initiated an investigation, to which defendant Melinda Algarin, a Child Protective Specialist ("CPS"), was assigned. Defs. 56.1 ¶¶ 141, 149. On March 24, 2016, ACS filed an Article 10 neglect proceeding against plaintiffs in Kings County Family Court. Pls. Counter 56.1 ¶ 69.

The neglect proceeding was based on the children's alleged excessive absenteeism from school. *See* Defs. Mot. Ex. A ("Family Court Record"), ECF No. 82-3 at 1–6. The petition supported the allegation of excessive absenteeism with attendance records from P53K. Family Court Record at 1–6. Plaintiffs claim that the allegations of excessive absenteeism were false, and that the attendance records for the children were fabricated. Pls. 56.1 ¶ 10. The attendance record for KdM from the school, attached as Exhibit 6 to

---

[3]    Paragraphs 21 and 22 of Defendants' 56.1 Statement states that the intake report was dated March 15, 2015. *See* Defs. 56.1 ¶¶ 21–22. However, review of the report indicates a date of March 15, 2016. Defs. Mot. Ex. B, ECF No. 82-4 at 19. Additionally, other statements in Defendants' 56.1 Statement indicate that the report was likely received on March 15, 2016. *See* Defs. 56.1 ¶ 142. Considering that the report includes indications of absenteeism during the 2015–2016 school year, which presumably begins in Fall 2015, the Court assumes that the intake report was completed in March 2016.

plaintiffs' opposition, indicate that KdM attended 77% of school days in Fall 2015, and 80% of school days in Spring 2016. *See* Pls. Opp'n Ex. 6 ("KdM Attendance Record"), ECF No. 87-6. Plaintiffs do not provide similar records for KlM, but review of the ACS record submitted by defendants indicates that KlM attended approximately 74% of school days in Fall 2015 and 80% of school days in Spring 2016. *See* Defs. Mot. Ex. B ("ACS Record"), ECF No. 82-4 at 68.[4] Plaintiffs note that the children's issues with attendance were largely caused by an issue with the school buses. Pls. 56.1 ¶ 8. Lastly, plaintiffs note that the petition was based on plaintiffs' failure to immunize their children, even though plaintiffs had requested a vaccine exemption for a vaccine plaintiffs "sincerely disagreed with." Pls. 56.1 ¶ 11. However, review of the petition does not demonstrate that the petition was based on issues with the children's immunization status, although the children's immunization status arose in the neglect investigation and proceeding. *See* Family Court Record at 1–6.

The same day that the neglect proceeding was initiated, the children were allowed to remain in their parents' custody under ACS supervision by the Family Court. Defs. 56.1 ¶¶ 69–70. Sometime in the course of defendant CPS Algarin's investigation, she spoke with the children's teachers, defendant school psychologist Sanna, the school nurse, and defendant Principal Leykam. Defs. 56.1 ¶ 32. While plaintiffs do not dispute that these conversations took place, plaintiffs aver that the individuals CPS Algarin spoke with "exaggerated, fabricated and lied" about their concern for the children. Pls. Counter 56.1 ¶ 32. According to defendant CPS Algarin's report, the children's teachers described that

---

[4]    Plaintiffs assert that at the Family Court proceeding, defendant Leykam confirmed "the children were only absent for 13 days in 2016." *See* Pl. 56.1 ¶ 35. Neither plaintiff's 56.1 statement nor defendant Leykams Family Court testimony clarifies whether KlM, KdM, or both KlM and KdM were absent on those 13 days. Pl. 56.1 ¶ 35; *see also* Pl. Mot. Ex. 22.

the children often came to school wearing dirty clothing with a foul odor, that the children's teeth had buildup which suggested they were not being brushed, and that some of KdM's teeth were rotting and blackened. *See* ACS Record 36.

On or about November 28, 2016, defendant school psychologist Sanna reported to CPS Algarin that she observed a burn mark on KdM's left arm, and that plaintiffs did not provide an explanation for the mark. Defs. 56.1 ¶ 71. Plaintiffs do not dispute that this report was made, or that KdM had a burn mark on his arm. *See* Pls. Counter 56.1 ¶¶ 29, 71. Plaintiffs allege that KdM accidentally burned his arm on the radiator at home, and that a doctor's note to that effect was available in his bookbag. Pls. Counter ¶ 29.

In an undated letter, KdM's teacher stated that starting with the first day of school, presumably for the 2015–2016 school year, KdM had shown signs of neglect, including arriving to the school soaked in urine, with poor hygeine and foul odor. *See* Defs. 56.1 ¶ 45; Defs. Mot. Ex. C ("DOE File"), ECF No. 82-5 at 4. Plaintiffs dispute the letter, and state that it was written "at the urging of Leykam and Sanna and was based upon exaggerations and outright lies." Pls. Counter 56.1 ¶ 45. Various other individuals, including defendants Leykam and Sanna, expressed concern for the children's health and hygiene through letters or reports to CPS Algarin. *See* Defs. 56.1 ¶¶ 49–51, 61. Plaintiffs dispute the bases for these reports of concern, and accuse defendants Leykam and Sanna of urging other individuals to make false reports. *See* Pls. Counter 56.1 ¶¶ 49–51, 61.

Throughout the ACS investigation and during the pendency of the neglect proceeding, plaintiffs allege defendants made other false claims, including that KlM was being oversexualized and that the children were improperly failing to receive immunizations and medical care. *See* Pls. 56.1 ¶ 23. Plaintiffs note that the marks on KlM, which were cited by defendant Sanna as one of the bases for her concern about

sexualization, were from KlM itching her pelvic area due to eczema. Pls. 56.1 ¶ 24. This explanation was supported by the children's pediatrician and the school nurse. Pls. 56.1 ¶ 24. Additionally, plaintiffs note that the children were not being given a specific vaccination that the plaintiffs sincerely disagreed with, and for which they sought a vaccine exemption. Pls. 56.1 ¶ 11. The plaintiffs informed the school, and defendant Algarin, that they were in the process of having the children exempted from that vaccination. Pls. 56.1 ¶¶ 12–13; *see also* Defs. 56.1 ¶ 146; Pls. Counter 56.1 ¶ 146.

On December 1, 2016, defendant Attorney Umberto Jean-Louis filed a motion, on behalf of ACS, requesting that the Family Court remand the children to the care and custody of ACS, based on the allegations of inadequate hyegeine and an unexplained burn on one of the children. Defs. 56.1 ¶ 76; *see also* Pls. Counter 56.1 ¶ 76 (stating that this submission was "full of fabrications and falsehoods"). The court held hearings on this motion and the children ultimately remained in the custody of their parents. Defs. 56.1 ¶¶ 77–78; *see also* Pls. Counter 56.1 ¶ 78.

On March 20, 2017, the Family Court granted ACS's request to amend its petition. Defs. 56.1 ¶ 83. Plaintiffs moved to dismiss the amended petition. Defs. 56.1 ¶ 85. The court then held fact finding hearings during which defendant Leykam testified that the children were present approximately 78% of the time during the 2015-2016 school year, despite her letter to the court, dated November 20, 2016, which reported that the children were absent approximately 78% of the time. Defs. 56.1 ¶ 178; *see also* Family Court Record at 148–50 (Leykam's testimony at the fact finding hearing), 59–60 (Leykam's letter to the Family Court reporting that the children were absent 78% of the time in the 2015–2016 school year). ACS subsequently requested an adjournment of the fact-finding hearings, which was denied. Defs. 56.1 ¶¶ 88–89. The Family Court then struck Principal Leykam's

testimony and adjourned the proceedings. Defs. 56.1 ¶ 89. ACS ultimately withdrew the neglect petition, and the Family Court judge dismissed the action. Defs. 56.1 ¶ 90.

## STANDARD OF REVIEW

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it might affect the outcome of the suit under the governing law." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 13 F.4th 247, 259 (2d Cir. 2021). Facts are in genuine dispute when "the jury could reasonably find for" the non-moving party based on the evidence in the record. *Borley v. United States*, 22 F.4th 75, 78 (2d Cir. 2021).

The movant "bears the initial burden of showing that there is no genuine dispute as to a material fact." *Jaffer v. Hirji*, 887 F.3d 111, 114 (2d Cir. 2018). [5] Where the moving party meets their burden, the nonmoving party must provide sufficient evidence establishing a genuine issue of material fact beyond "[t]he mere existence of a scintilla of evidence." *Fabrikant v. French*, 691 F.3d 193, 205 (2d Cir. 2012). The court need only consider admissible evidence and is not obligated to conduct an independent review of the record to identify a factual dispute. *Looney v. Macy's Inc.*, 588 F. Supp. 3d 328, 340 (E.D.N.Y. 2021).

When both parties submit a motion for summary judgment, "the court evaluates each party's motion on its own merits, and all reasonable inferences are drawn against the party whose motion is under consideration." *Roberts v. Genting N.Y. LLC*, 68 F.4th 81, 88 (2d Cir. 2023). A district court's role is "not to resolve disputed issues of fact but to

---

[5] Throughout this opinion, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

assess whether there are any factual issues to be tried." *McKinney v. City of Middletown*, 49 F.4th 730, 738 (2d Cir. 2022). Furthermore, "a district court may not make credibility determinations, or weigh evidence" on summary judgment. *Reynolds v. Quiros*, 990 F.3d 286, 294 (2d Cir. 2021). Thus, a district court denies summary judgment where there are disputed facts "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Davis-Garett v. Urb. Outfitters, Inc.*, 921 F.3d 30, 45 (2d Cir. 2019) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)).

## DISCUSSION

The parties have filed cross-motions for summary judgment. *See* Defs. Mot.; Pls. Mot. Plaintiffs seek summary judgment only as to their claim for malicious prosecution, brought pursuant to 42 U.S.C. § 1983. *See generally* Pls. Mot. Defendants seek summary judgment as to each of plaintiffs' claims, and argue that plaintiffs' amended complaint should be dismissed in its entirety. Defs. Mot. 9. Defendants claim, among other things, that plaintiffs have failed to show that they were deprived of any constitutional right, Defs. Mot. 13–14, and that there was a reasonable basis to suspect the children were being neglected by plaintiffs, Defs. Mot. 15–22.

The Court finds that, even when construing the evidence in the light most favorable to plaintiffs, and resolving all factual inferences in their favor, plaintiffs' claims fail as a matter of law.[6]

---

[6]    Having found that plaintiffs' claims fail as a matter of law, the Court need not determine whether defendants are entitled to qualified or absolute immunity in reporting plaintiffs to ACS, initiating a neglect proceeding against plaintiff, or pursuing that proceeding. *White v. Dep't of Corr. Servs.*, 814 F. Supp. 2d 374, 394 (S.D.N.Y. 2011) ("If the plaintiff's allegations do not state a constitutional claim, there is no necessity for further inquiries concerning qualified immunity.").

## I.    Malicious prosecution

"In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of [his or her] rights under the Fourth Amendment *and* must establish the elements of a malicious prosecution claim under state law." *Davis-Guider v. City of Troy*, No. 23-589, 2024 WL 5199294, at *2 (2d Cir. Dec. 23, 2024) (emphasis added). Thus, the plaintiff must first show a violation of rights under the Fourth Amendment, specifically "a seizure or other perversion of proper legal procedures implicating [his or her] personal liberty and privacy interests under the Fourth Amendment." *Lanning v. City of Glen Falls*, 908 F.3d 19, 25 (2d Cir. 2018), *abrogated on other grounds by Thompson v. Clark*, 596 U.S. 36 (2022). Next, the plaintiff must show conduct that constitutes malicious prosecution under state law. *Kinzer v. Jackson*, 316 F.3d 139, 143 (2d Cir. 2003). The elements of a Section 1983 malicious prosecution claim are taken from the law of the forum state. *Cornejo v. Bell*, 592 F.3d 121, 129 (2d Cir. 2010). Under New York law, the elements of a malicious prosecution claim are: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Stampf v. Long Island R.R. Co.*, 761 F.3d 192, 198 (2d Cir. 2014) (citing *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010)).

Plaintiffs and defendants seek summary judgment as to plaintiffs' claim of malicious prosecution. *See* Pls. Mot.; Defs. Mot. 26. Plaintiffs argue that they are entitled to judgment as a matter of law because the neglect proceedings were instituted with malicious intent. Specifically, plaintiffs allege that defendant Leykam "repeatedly lied about concerns she had as to" plaintiffs' children, and that CPS Algarin and Attorney

9

Jean-Louis "knew the claims by the school principal were not accurate" but proceeded with the neglect proceeding anyway. Pls. Mot. 5. Plaintiffs allege that defendants fabricated evidence, exaggerated facts, "turned a blind eye to facts negating any cause to suggest neglect," lied under oath, and suborned perjury. Pls. Mot. 5. Thus, plaintiffs argue, defendants lacked probable cause to initiate the proceedings and those proceedings were ultimately terminated in plaintiffs' favor. *See* Pls. Mot. 19–24.

Conversely, defendants argue they are entitled to summary judgment on plaintiffs' malicious prosecution claim because plaintiffs have failed to establish any of the elements for malicious prosecution under New York state law. *See* Defs. Mot. 26–28. This includes that plaintiffs were not exposed to criminal liability, the first element of the claim. Thus, defendants argue, plaintiffs' malicious prosecution claim fails. Defs. Mot. 27.

In response, plaintiffs argue that the defendants "cannot dispute" that they initiated the Article 10 neglect proceedings and therefore "plaintiffs are entitled to judgment on this element." Pls. Opp'n 23. Presumably, plaintiffs refer to the first prong of a malicious prosecution claim under New York state law, which requires the plaintiff to show the initiation or continuation of a criminal proceeding against the plaintiff.

### A. Plaintiffs have failed to establish that their Fourth Amendment rights were implicated by the Family Court proceedings.

Plaintiffs are correct that the Second Circuit has not "barred federal malicious prosecution claims arising from civil or administrative proceedings" implicating a plaintiff's Fourth Amendment rights. Pls. Opp'n 19. In *Washington v. County of Rockland*, the Second Circuit noted that a Section 1983 malicious prosecution claim could be premised on a civil proceeding. 373 F.3d 310, 317 (2d Cir. 2004). However, the court clarified that in order to support a federal malicious prosecution claim, the underlying

civil proceeding had to "implicate the Fourth Amendment to such a degree as to permit a § 1983 claim[.]" *Id.* at 316. The court then rejected plaintiffs' argument that a disciplinary hearing brought against state correctional officers implicated those officers' Fourth Amendment rights. Thus, while not foreclosing a Section 1983 malicious prosecution claim premised on a civil proceeding, the court found that the kind of civil proceeding at issue in *Washington*, where plaintiffs were not taken into custody, physically detained, or seized within the traditional meaning of the Fourth Amendment, is "unlikely" to "implicate constitutional rights in a manner that would warrant redress under § 1983." *Id.* at 317.

While the Second Circuit has not foreclosed a federal malicious prosecution claim premised on a civil proceeding, it has not settled whether child neglect proceedings are the type of civil action that "implicate the Fourth Amendment to such a degree as to permit a § 1983 claim[.]" *Id.* at 316; *see also Walker v. City of New York*, 621 F. App'x 74, 76 (2d Cir. 2015) ("[T]he law in our Circuit is unsettled as to whether child removal proceedings can give rise to a federal claim for malicious prosecution of a parent."); *Dabah v. Franklin*, No. 22-845, 2023 WL 3577872, at *4 (2d Cir. May 22, 2023) (finding defendants entitled to qualified immunity because "we have never recognized any such independent Fourth Amendment right of the parent" to be free of the seizure of their child in neglect proceeding); *see also Grullon v. Admin. for Child. Servs.*, No. 18-cv-03129, 2021 WL 981848, at *10 (S.D.N.Y. Mar. 16, 2021).

Courts in the Second Circuit that have considered the issue have found a child neglect proceeding implicates a plaintiff's Fourth Amendment rights where the child at issue is removed from the plaintiff parent's custody. *See Kurtz v. Hansell*, No. 20-cv-03401, 2021 WL 1143619, at *13 (S.D.N.Y. Mar. 24, 2021) ("Absent definitive Circuit

guidance, the weight of authority suggests that the removal of a child from her parents, via civil family court proceedings, implicates sufficient constitutional interests to support a malicious prosecution claim."); *V.A. v. City of New York*, No. 22-cv-00773, 2023 WL 6254790, at *7–8 (S.D.N.Y. Sept. 26, 2023) (finding separation of approximately eight months was sufficient to implicate parent and child's Fourth Amendment rights); *Estiverne v. Esernio-Jenssen*, 581 F. Supp. 2d 335, 348–49 (E.D.N.Y. 2008) (allowing a malicious prosecution claim to proceed against defendants who reported plaintiffs to ACS, resulting in placement of plaintiffs' child in foster care).[7] However, there is some suggestion that a plaintiff's Fourth Amendment rights are likely not implicated by a child neglect proceeding even where the plaintiff's parental rights were interrupted. *See Dabah*, 2023 WL 3577872, at *4 (affirming district court grant of qualified immunity but suggesting that plaintiff parents cannot bring malicious prosecution claims for Article 10 proceedings that result in seizure of plaintiff's children); *see also Zubko-Valva v. County of Suffolk*, 607 F. Supp. 3d 301, 316–17 (E.D.N.Y. 2022) (finding plaintiff failed to allege violation of her Fourth Amendment rights where she lost unsupervised visitation with her children for almost two months).

Here, plaintiffs admit that their children were never removed from their custody due to the neglect proceeding that is the subject of their amended complaint. *See* Defs. 56.1 ¶ 140 (Mr. McCree confirmed at his deposition that the children were not removed

---

[7]    In support of their argument that civil neglect proceedings can give rise a Section 1983 malicious prosecution claim, plaintiffs also point to the Eleventh Circuit's decision in *Crider v. Williams*, No. 21-13797, 2022 WL 3867541 (11th Cir. 2022). In *Crider*, plaintiffs' child was removed from their custody from over a year. Here, plaintiffs' children were never removed from their custody. Additionally, in determining whether plaintiffs had established a federal malicious prosecution claim, the Eleventh Circuit considered principles of Alabama common law which are not applicable here.

during this action); Pls. Counter 56.1 ¶ 140 (admitting the same); *see also* Defs. Mot. Ex. E ("M. McCree Dep. Tr."), ECF No. 82-7 at 24:2–24 (confirming that Mr. McCree's "children were never removed as a result of these Family Court proceedings"). Additionally, plaintiffs do not allege that they have been subject to any other deprivation which traditionally implicates a plaintiff's Fourth Amendment rights such as physical detention or seizure. Simply being subject to a civil neglect proceeding, without showing some interference with or violation of a plaintiff's rights under the Fourth Amendment, cannot support a Section 1983 malicious prosecution claim. *See Graham v. City of New York*, 869 F. Supp. 2d 337, 343–46, 356 (E.D.N.Y. 2012) (finding plaintiff's Fourth Amendment rights not violated even where plaintiff was denied contact with his child); *McLoughlin v. Rensselaer Cnty. Dep't of Soc. Servs.*, No. 18-cv-00487, 2019 WL 3816882, at *12 (N.D.N.Y. Aug. 14, 2019) (finding that while "removing a child can constitute a 'seizure' in violation of the child's Fourth Amendment rights, the commencement of abuse investigations do not implicate Fourth Amendment rights" and dismissing plaintiff parents' and child's malicious prosecution claims). Having failed to show that their Fourth Amendment rights were implicated by the neglect proceedings, plaintiffs' Section 1983 malicious prosecution claim fails as a matter of law.

### B. Plaintiffs have failed to establish the elements of malicious prosecution according to state law.

Even had plaintiffs demonstrated that their Fourth Amendment rights had been implicated, they fail to establish the second element of a Section 1983 malicious prosecution claim. Specifically, plaintiffs have failed to establish each element of malicious prosecution pursuant to state law. Def. Mot. 27. As discussed above, to establish a claim for malicious prosecution under New York law, the plaintiff must show: "(1) the

initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Stampf v. Long Island R.R. Co.*, 761 F.3d 192, 198 (2d Cir. 2014) (citing *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010)).

Plaintiffs' arguments do not address the requirement under state law that the proceeding underlying a malicious prosecution claim be of a criminal nature. While a court need not "mechanically apply the law of New York State" to determine whether the requirements of a Section 1983 malicious prosecution claim have been met, *see Lanning*, 908 F.3d at 26, courts within the Second Circuit, when applying New York law, have found that a Section 1983 malicious prosecution claim fails where the underlying proceeding is not criminal in nature. *See Davis v. Whillheim*, No. 17-cv-05793, 2019 WL 935214, at *12 (S.D.N.Y. Feb. 26, 2019) ("Plaintiff is barred from bringing a § 1983 claim predicated on malicious prosecution because, during the Family Court proceedings, Plaintiff was not subject to criminal liability."); *Schinella v. Salem*, No. 19-cv-08931, 2024 WL 643169, at *4 (S.D.N.Y. Feb. 15, 2024) (finding that plaintiff could not "meet the required state law elements for a claim of malicious criminal prosecution because no criminal proceedings were ever brought against her").

New York law does provide for an exception where a civil action may be a predicate proceeding for a malicious prosecution tort claim—where a plaintiff is able to demonstrate a "special injury" arising from the proceeding. *See Engel v. CBS, Inc.*, 145 F.3d 499, 502 (2d Cir. 1998). This "special injury" must be "some interference with the plaintiff's person or property . . . beyond the ordinary burden of defending a lawsuit." *Id.* Where a plaintiff loses custody of a child from a neglect proceeding, this deprivation of

custody can constitute a "special injury" sufficient to establish a malicious prosecution claim. *Yuan v. Rivera*, 48 F. Supp. 2d 335, 349 (S.D.N.Y. 1999) (finding that depriving the plaintiff custody of her children for several months met the threshold of a "special injury"); *Providencia V. v. Schutlze*, No. 02-cv-09616, 2007 WL 1582996, at *5 n.3 (S.D.N.Y. May 31, 2007) (noting that while generally malicious prosecution claims are limited to criminal actions, the removal of plaintiff's son could support a malicious prosecution claim). However, defending oneself against a neglect proceeding does not give rise to a special injury, where the plaintiff does not also lose custody of their child. *See McCaul v. Ardsley Union Free Sch. Dist.*, 514 F. App'x 1, 5 (2d Cir. 2013). This is true even if the proceeding is based on allegedly false reports. *Id.*

Here, plaintiffs do not demonstrate that their children were removed from the home or that they were somehow deprived custody. Instead, plaintiffs claim that they had to defend themselves in neglect proceedings that were improperly initiated due to defendants' lies and fabricated evidence. This does not constitute special injury. Plaintiffs' allegations constitute "ordinary physical, psychological, or financial demands of defending [one]self" in a civil neglect proceeding and are insufficient to warrant the exception of a civil action being the predicate proceeding for a New York malicious prosecution tort claim. *McCaul*, 514 F. App'x at 5; *see also Schinella*, 2024 WL 643169, at *6 (reputational harm or having to expend financial resources to defend a lawsuit are not sufficient to sustain a claim for malicious civil prosecution).

Thus, even viewing the facts in the light most favorable to plaintiffs and assuming that their allegations of defendants' wrongdoing are all true, plaintiffs have failed to show a violation of their Fourth Amendment rights or substantiate a predicate state law claim

for malicious prosecution. Accordingly, plaintiffs' Section 1983 malicious prosecution claim is dismissed.

## II.    Conspiracy

Defendants move for summary judgment on plaintiffs' Section 1983 conspiracy claim. To succeed on a Section 1983 claim for conspiracy, a plaintiff must allege: "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999).[8] First, defendants argue that plaintiffs have failed to provide any factual support that would show defendants entered into an agreement to violate plaintiffs' constitutional rights. Defs. Mot. 31–32. Defendants next argue that even if plaintiffs had sufficiently alleged an agreement, they have failed to allege a deprivation of their constitutional rights. Defs. Mot. 32.

Plaintiffs argue that defendants' motion is based on the faulty premise that "there were no constitutional deprivations here." Pls. Opp'n 29. Plaintiffs argue that this argument "lacks merit and issues of fact exist as to the conspiracy claim," requiring

---

[8]    Defendants argue that plaintiffs' claim for Section 1983 conspiracy should be stated as a claim under Section 1985 which "applies specifically to conspiracies." Defs. Mot. 31 (quoting *Webb v. Gooard*, 340 F.3d 105, 110 (2d Cir. 2003)). Plaintiffs do not clarify whether their conspiracy claim should be considered pursuant to Section 1983 or Section 1985. Plaintiffs' amended complaint states that their eleventh cause of action is brought pursuant to "42 USC 1983 Conspiracy," AC ¶¶ 63–65, but their opposition to defendants' motion for summary judgment states that defendants' "motion for summary judgment on the claim for conspiracy under section 1985 must be denied." Pls. Opp'n 29. However, to state a claim pursuant to Section 1985, a plaintiff must allege that the conspiracy was motivated by some racial or otherwise class-based, invidious discriminatory animus. *Dolan v. Connolly*, 794 F.3d 290, 296 (2d Cir. 2015). As plaintiffs do not allege a racial or otherwise class-based invidious discriminatory animus, the Court considers plaintiffs' claims as plead pursuant to Section 1983.

defendants' motion be denied. To support their conspiracy claim, plaintiffs point to "a tacit agreement between the named defendants to maliciously prosecute these plaintiffs in the absence of probable cause[.]" Pls. Opp'n 29.

An agreement between two or more state actors is an essential element of plaintiffs' conspiracy claim. Where a party bears the burden of proof at trial, and after adequate time for discovery has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case," summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To overcome a motion for summary judgment where the moving party has pointed to a lack of evidence in support of an essential element of the nonmoving party's claim, the nonmoving party must come forward with "specific evidence" to demonstrate "the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). Where there is "a complete failure of proof concerning an essential element of the nonmoving party's case," and the nonmoving party bears the burden of proof at trial, this failure "necessarily renders all other facts immaterial" and entitles the moving party to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

Plaintiffs offer no factual basis by which a jury could conclude that the individual defendants worked in concert in furtherance of a conspiracy. Plaintiffs' only assertion to support this element is that there was "a tacit agreement between the named defendants." Pls. Opp'n 29. Plaintiffs provide no citations to the record to support this tacit conspiracy and provide no examples of the evidence to which they refer. Thus, this entirely conclusory argument with no factual support would give the trier of fact no basis to find for plaintiffs.

Even if the Court were to construe plaintiffs' arguments liberally, the only possible factual allegation appears in support of plaintiffs' malicious prosecution claim. There, plaintiffs argued that defendants Sanna and Leykam fabricated evidence and then defendants Algarin and Jean-Louis "joined in" by "ignoring the lack of probable cause and accepting Leykam and Sanna's unverified fabrications." Pls. Mot. 25. Plaintiffs argue that because the defendants were in possession of the children's attendance records, they were aware that Leykam had fabricated allegations of excessive absenteeism and pursued the neglect proceeding anyway. *See* Pls. Mot. 11 n.1, 21. The attendance records offered by defendants demonstrate that KdM was absent 37 days and KlM was absent 40 days in the 2015–2016 school year. ACS Record 67–68; *see also* KdM Attendance Record. While lower than the absenteeism reported by defendant Leykam in her letter to the Family Court Judge, the significant absenteeism demonstrated in the children's attendance records undermines plaintiffs' contention that Algarin and Jean-Louis relied on Leykam's fabrications in deciding to pursue the neglect proceeding. Indeed, plaintiffs have put forth no evidence by which a trier of fact could find that Algarin and Jean-Louis relied on that letter to the judge rather than the primary sources in the ACS file. In fact, the absences alleged in the March 2016 petition are the lower absences that correspond with KlM and KdM's school attendance records. Family Court Record 5; KdM Attendance Record.

Additionally, defendant Leykam's allegedly falsified letter to the Family Court was written in November 2016, approximately nine months after the neglect proceeding was initiated. Family Court Record 59–60. Thus, even assuming the truth of plaintiffs' claim that Leykam and Sanna intentionally fabricated the other allegations of neglect, plaintiffs have presented no evidence that either Algarin or Jean-Louis knew that Leykam and Sanna's other allegations of neglect were fabricated and agreed to continue the neglect

proceeding for the purpose of violating plaintiffs' rights. Furthermore, the parties do not dispute that other individuals at the school, including the children's teachers and the school nurse, expressed concern for the children. *See* Pls. Counter 56.1 ¶¶ 32, 49–51. While plaintiffs claim, without evidentiary support, that those individuals were urged to make false reports by Leykam and Sanna, plaintiffs do not offer evidence to show that either Algarin or Jean-Louis knew that those other reports were falsified as plaintiffs claim, or that they agreed to accept those falsified reports for the purpose of violating plaintiffs' rights. *See* Pls. Counter 56.1 ¶¶ 32, 49–51.

While conspiracies are "by their very nature secretive operations, and may have to be proven by circumstantial, rather than direct, evidence," the plaintiff must still provide some factual basis to support a "meeting of the minds." *McCrae v. Town of Brookhaven*, No. 18-cv-07061, 2024 WL 5120016 (E.D.N.Y. Dec. 16, 2024); *see also Mitchell v. County of Nassau*, 786 F. Supp. 2d 545, 564 (E.D.N.Y. 2011) ("A § 1983 conspiracy claim based on conclusory allegations and unsubstantiated statements may not withstand a summary judgment motion where the record is devoid of any proof of an agreement among Defendants to act in concert to violate Plaintiff's constitutional rights."). Despite having concluded discovery in this case, plaintiffs do not present facts as to the time, place, or substance of any agreement, or whether that agreement was made between all defendants or a subset. *See Blue v. City of New York*, No. 16-cv-09990, 2018 WL 2561023, at *9 (S.D.N.Y. June 4, 2018) (plaintiff alleging conspiracy must provide some factual basis supporting a meeting of the minds, "augmented by some details of time and place and the alleged effects of the conspiracy"). Plaintiffs' allegation that the defendants "agreed to act in concert, with each other, to inflict unconstitutional injuries," AC ¶ 64, is inadequate for this claim to be proven even by circumstantial evidence.

19

At summary judgment, the Court is obligated to consider evidence in the light most favorable to the nonmoving party. However, here, plaintiffs have put forward no evidence for the Court to construe in their favor. *See Ostensen v. Suffolk County*, 236 F. App'x 651, 653 (2d Cir. 2007) (affirming grant of summary judgment to defendants on Section 1983 conspiracy claim where "the record is devoid of any evidence that could establish the existence of a conspiracy"). Plaintiffs' conclusory allegation of a tacit conspiracy, unsupported by the record evidence, is insufficient to establish that a reasonable jury could find for plaintiffs and thus overcome defendants' motion for summary judgment. In the absence of circumstantial or direct evidence of an agreement between the defendants, summary judgment in favor of defendants on the conspiracy claim is warranted. Accordingly, plaintiffs' Section 1983 conspiracy claim is dismissed.

## III.    Due process claims

Defendants argue that plaintiffs' due process claims do not demonstrate that defendants violated their constitutional rights, and therefore defendants are entitled to summary judgment. Specifically, defendants argue that plaintiffs cannot show a constitutional deprivation where their children were not separated from them, and because all individual defendants had "objectively reasonable bases to suspect" the children were being neglected. Defs. Mot. 24. Plaintiffs allege both procedural and substantive due process claims. AC ¶ 1. The Court will address both in turn.

### A.  Procedural due process claim

To sustain a claim that plaintiffs' procedural due process rights were violated, plaintiffs must establish two elements: "(1) the existence of a property or liberty interest that was deprived and (2) deprivation of that interest without due process." *Bryant v. N.Y. State Educ. Dep't*, 692 F.3d 202, 218 (2d Cir. 2012). Parents have a fundamental

liberty interest in the "care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 65 (2000). It necessarily follows that "family members have, in general terms, a substantive right under the Due Process Clause to remain together without the coercive interference of the awesome power of the state." *Anthony v. City of New York*, 339 F.3d 129, 142 (2d Cir. 2003). Therefore, "failure to afford parents pre-removal due process may give rise to a Fourteenth Amendment procedural due process claim." *Frazier v. Williams*, No. 15-cv-06531, 2016 WL 2644897, at *3 (E.D.N.Y. May 9, 2016). Though the government has a "compelling interest in the welfare of children," constitutionally adequate procedures must still be followed during any termination process by the state. *McNeil v. HCDSS*, No. 18-cv-00631, 2018 WL 6173983, at *5 (N.D.N.Y. Aug. 17, 2018), *report and recommendation adopted sub nom. McNeil v. Riente*, 2018 WL 4895848 (N.D.N.Y. Oct. 9, 2018).

However, "[w]here a state actor has not removed a child from a parent's custody. . . there has been no deprivation entitling a parent to procedural due process." *Frazier*, 2016 WL 2644897, at *3. Courts in this circuit frequently dismiss such claims where the claim arises either from family court proceedings concerning child custody or ACS investigations, and where plaintiffs do not allege a loss of child custody. *See Brennan v. County of Broome*, No. 09-cv-00677, 2011 WL 2174503, at *8 (N.D.N.Y. June 2, 2011) (holding plaintiff failed to present procedural due process claim where defendant was not responsible for removing the child from plaintiff's custody); *Williams v. Jurow*, No. 05-cv-06949, 2007 WL 5463418, at *14 (S.D.N.Y. June 29, 2007), *report and recommendation adopted as modified*, 2008 WL 4054421 (S.D.N.Y. Aug. 28, 2008) (dismissing procedural due process claim where plaintiff was not deprived custody of child); *Daniels v. Murphy*, No. 06-cv-05841, 2007 WL 1965303, at *4 (E.D.N.Y. July 2,

2007) (same); *Phillips v. County of Orange*, 894 F. Supp. 2d 345, 378 (S.D.N.Y. 2012) (dismissing parent plaintiffs' procedural due process claim because unauthorized interview of their child did not infringe on their parental rights); *Cornigans v. Mark Country Day Sch.*, No. 03-cv-01414, 2006 WL 3950335, at *6 (E.D.N.Y. July 12, 2006) (same); *Xiamin Zeng v. Augustin*, No. 17-cv-09988, 2019 WL 1284274, at *1 (S.D.N.Y. Mar. 20, 2019) (same); *McNeil*, 2018 WL 6173983, at *5 (dismissing procedural due process claim because child was not removed from plaintiffs' custody even though plaintiffs alleged defendant case worker fabricated lies in report and lied under oath).

Plaintiffs make no argument in support of their claim that their procedural due process rights were violated. *See* Pls. Opp'n. Additionally, plaintiffs do not dispute that the children were not removed from their parents in the underlying neglect proceeding. *See* Defs. 56.1 ¶ 140 (Mr. McCree confirmed at his deposition that the children were not removed during this action); Pls. Counter 56.1 ¶ 140 (admitting the same); *see also* M. McCree Dep. Tr. 24:2–24 (confirming that Mr. McCree's "children were never removed as a result of these Family Court proceedings"). Here, plaintiffs clearly had a fundamental interest in the care, custody and control of their children. However, they have not shown that this interest was deprived, with or without due process. Even construing the facts in the light most favorable to plaintiffs, it is undisputed that the children were never removed from plaintiffs' custody. Accordingly, plaintiffs' procedural due process claim fails as a matter of law and is dismissed.

## B. Substantive due process claim

Plaintiffs' substantive due process claim fails for the same reason. "[W]hile a procedural due process claim challenges the procedure by which a removal is effected, a substantive due process claim challenges the fact of the removal itself." *Southerland v.*

*City of New York*, 680 F.3d 127, 142 (2d Cir. 2011). Therefore, to state a claim for substantive due process, a plaintiff must demonstrate that the state action was "so shocking, arbitrary, and egregious that the Due Process Clause would not countenance it even were it accompanied by full procedural protection." *Cox v. Warwick Valley Cent. Sch. Dist.*, 654 F.3d 267, 275 (2d Cir. 2011). "State action that is incorrect or ill-advised is insufficient to give rise to a substantive due process violation; rather, the action must be conscience-shocking." *Maco v. Baldwin Union Free Sch. Dist.*, No. 15-cv-03958, 2016 WL 4028274, at *4 (E.D.N.Y. July 26, 2016). Additionally, "[i]n the child removal and child abuse investigation context, the Second Circuit has repeatedly emphasized that the parents' liberty interest is counterbalanced by the compelling governmental interest in the protection of minor children." *K.D. ex rel. Duncan v. White Plains Sch. Dist.*, 921 F. Supp. 2d 197, 217 (S.D.N.Y. 2013).

Defendants argue that plaintiffs have not shown that defendants' actions were "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Okin v. Vill. Of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 431 (2d Cir. 2009). In particular, defendants argue that generally, even temporary separation of a child from his or her parents is not an interference severe enough to constitute a violation of a parent's substantive due process rights. Defs. Mot. 22. Moreover, defendants argue that where, as here, the individual defendants had reasonable suspicion that plaintiffs' children were being neglected, and their actions in response to that suspicion did not result in the children's separation from the plaintiffs, plaintiffs have failed to show that the defendants' actions were egregious, outrageous, or shocking to the conscience. Defs. Mot. 24.

Plaintiffs' opposition to defendants' motion for summary judgment on this claim is thin. Plaintiffs mainly argue that "instituting child neglect proceedings and maintaining

ACS/CPS supervision over the plaintiffs and their children for 2 ½ years is a significant deprivation of the liberty interest in parenting and is clearly a cognizable Fourth Amendment deprivation." Pls. Opp'n 21. Plaintiffs provide no legal citations for this proposition and do not dispute that the children were not removed from their custody. *See* Defs. 56.1 ¶ 140; Pls. Counter 56.1 ¶ 140; *see also* M. McCree Dep. Tr. 24:2–24.

The Court recognizes that such lengthy entanglement in a family court proceeding can be stressful on a family. However, the law remains that "[w]here there is no actual loss of custody, no substantive due process claim can lie." *Cox*, 654 F.3d at 276; *see also Baeringer v. Plainview-Old Bethpage Cent. Sch. Dist.*, No. 23-cv-03557, 2024 WL 3161814, at *3 (E.D.N.Y. June 25, 2024) ("[S]hort separations of children from their parents generally do not violate substantive due process rights."); *Maco*, 2016 WL 4028274, at *5 (finding plaintiff failed to allege a substantive due process violation where school principal made report to CPS that created the possibility plaintiff's child would be removed from her custody); *Frazier*, 2016 WL 2644897, at *4 ("Because plaintiff has not lost custody of her children . . . she cannot state a claim for a substantive due process violation."); *McCaul v. Ardsley Union Free Sch. Dist.*, 514 F. App'x 1, 3 (2d Cir. 2013) ("[Plaintiff]'s complaint does not allege that her parental custody was ever interrupted, and she admits in her brief that she never lost custody of her son. Thus, the district court properly dismissed her substantive due process claim on this ground.").

Here, plaintiffs have presented no evidence by which a jury could find the plaintiffs' children were removed from their custody, or otherwise find for plaintiffs in their substantive due process claim. And while plaintiffs find defendants' accusations of neglect to be outrageous, the Court does not reach that issue. Even construing the evidence in the light most favorable to the plaintiffs, plaintiffs cannot sustain a substantive due process

24

violation for a child separation that did not occur. Accordingly, plaintiffs have failed to establish a violation of their substantive due process rights. This claim is therefore dismissed.

### C. Fair Trial Claim

Plaintiffs' amended complaint also claims a violation of their right to a fair trial. AC ¶¶ 37–41. Defendants move for summary judgment as to this claim, but do not engage in a fulsome analysis of the claim. Defs. Mot. 1. Plaintiffs fail to address this claim in their briefing. Nevertheless, the Court addresses this claim given that it fails as a matter of law for the same reason as plaintiffs' procedural and substantive due process claims. *See Coltin v. Corp. for Just. Mgmt., Inc.*, 542 F. Supp. 2d 197, 204 (D. Conn. 2008).

"A fair trial claim is a civil claim for violations of a criminal defendant's Fourteenth Amendment due process rights." *Fappiano v. City of New York*, 640 Fed. Appx. 115, 118 (2d Cir. 2016). A fair trial claim may arise where exculpatory evidence is withheld in violation of the government's obligations pursuant to *Brady v. Maryland*, 272 U.S. 83 (1963), or when evidence against a defendant is fabricated. *Smalls v. Collins*, 10 F.4th 117, 132 (2d Cir. 2021). To establish a Section 1983 fair-trial claim based on fabrication of evidence, "a plaintiff must demonstrate that an (1) investigating official (2) fabricate[d] information (3) that is likely to influence a jury's verdict, (4) forward[ed] that information to prosecutors, and (5) the plaintiff suffer[ed] a deprivation of life, liberty, or property as a result." *Id.* at 132. As discussed previously, plaintiffs have failed to show a constitutional deprivation arising from this civil neglect proceeding in which their children were not removed from their custody.

There is a question as to whether plaintiffs may even bring a Section 1983 fair trial claim based on a neglect proceeding. *Zappin v. Cooper*, No. 16-cv-05985, 2018 WL

2305562, at *3 (S.D.N.Y. May 18, 2018) ("[A] denial of the right to a fair trial claim, as it is conceived of in the Second Circuit, is meant to redress unfairness in criminal proceedings that may go before a jury, and not civil bench trials[.]"); *see also Baron v. Lissade*, No. 19-cv-06256, 2021 WL 4407836, at *5 (E.D.N.Y. Sept. 27, 2021). Nevertheless, assuming for the purposes of this order that plaintiffs could bring a Section 1983 fair trial claim pursuant to the civil neglect proceeding, and defendants had fabricated evidence in that proceeding, plaintiffs have failed to establish a constitutional deprivation as a result and thus their Section 1983 fair trial claim fails as a matter of law. *See Rolon v. Henneman*, 517 F.3d 140, 148 (2d Cir. 2008) ("[I]n order to state a legally sufficient claim for the manufacture of false evidence, a plaintiff must colorably allege that this evidence was used against him [or her] to cause a constitutional injury."); *see also Mortimer v. City of New York*, No. 15-cv-07186, 2018 WL 1605982, at *23 (S.D.N.Y. Mar. 29, 2018) (finding plaintiff's fair trial "claim against the ACS Defendants in connection with the Family Court proceedings fails because she has not shown a deprivation of a liberty interest"); *cf Zubko-Valva*, 607 F. Supp. 3d at 314–15 (E.D.N.Y. 2022) (finding plaintiff sufficiently alleged a fair trial due process claim where she lost unsupervised visitation with her children for almost two months).

Accordingly, plaintiffs have failed to offer evidence by which a jury could find they were deprived life, liberty, or property; thus their fair trial claim is dismissed.

## IV.    Municipal Liability

Defendants move for summary judgment on plaintiffs' Section 1983 claim against the City of New York, brought pursuant to *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). A plaintiff asserting a Section 1983 claim against a municipality must allege three elements: "(1) a municipal policy or custom that (2)

causes the plaintiff to be subjected to (3) the deprivation of a constitutional right." *Agosto v. N.Y.C. Dep't of Educ.*, 982 F.3d 86, 97 (2d Cir. 2020); *see also Monell*, 436 U.S. at 691. To support a municipal policy or custom, a plaintiff must provide evidence of: "(i) a formal policy officially endorsed by the municipality; (ii) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (iii) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (iv) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees." *Scott v. Westchester County*, 434 F. Supp. 3d 188, 201 (S.D.N.Y. 2020).

Municipalities may not be held liable under Section 1983 pursuant to a *respondeat superior* theory of liability. "To establish *Monell* liability, a plaintiff cannot merely establish that the municipality employed a tortfeasor; the plaintiff must establish that the municipality's own acts or inaction caused its employees to violate plaintiff's constitutional rights." *Boyd v. City of Buffalo*, No. 22-cv-00519, 2025 WL 262152, at *5 (W.D.N.Y. Jan. 22, 2025).

### A. Plaintiffs have not established a policy or custom of the City to support their Monell claim.

Defendants argue that plaintiffs' claim of municipal liability fails because plaintiffs have not shown that their constitutional rights were violated or that any alleged constitutional violations were caused by an official policy or custom of the City of New York. Defs. Mot. 30. Plaintiffs state that defendants' "argument lacks merit and issues of fact exist as to the municipal claim" without providing what those issues of fact are. Pls.

Opp'n 29. Plaintiffs further allege that the evidence shows "an implied official policy or custom to deny the plaintiffs' [sic] their constitutional rights." Pls. Opp'n 29.

Plaintiffs do not point to evidence in the record or the parties' 56.1 statements to support their *Monell* claim. *See* Pls. Opp'n 29. Review of the plaintiffs' Rule 56.1 counterstatement of fact and their own Rule 56.1 statement of facts reveal allegations regarding wrongdoing attributed to the individual defendants. *See* Pls. 56.1 ¶¶ 6, 17–23, 27–28, 33–35, 37, 39–42, 45–47, 50. However, allegations of "isolated acts" that are "performed by non-policy making municipal employees . . . are generally insufficient to plausibly allege a policy, custom, or practice." *Destine v. City of New York*, No. 20-cv-00082, 2021 WL 5868158, at *2 (S.D.N.Y. Dec. 10, 2021) (dismissing claims of false arrest and malicious prosecution against municipality where plaintiff alleged wrongdoing by municipal employees but made no allegations of a municipal policy or custom). The Court also notes that plaintiffs' complaint alleges that the City of New York is liable under *Monell* because the "City was aware" that employees of city agencies "routinely made baseless and facially insufficient accusations and instituted improper claims." AC ¶ 51. However, plaintiffs do not offer evidence to support this allegation. Here, plaintiffs' allegations against defendants constitute conduct performed by non-policy making municipal employees, and plaintiffs provide no evidence of a pattern or practice of the City of New York sufficient for their *Monell* claim to survive.

Plaintiffs do not make clear what factual disputes exist as to municipal liability and have not presented facts sufficient to substantiate a constitutional violation. Even construing all factual inferences in the light most favorable to plaintiffs, plaintiffs have not established that they were deprived of the care, custody or control of their children. And as discussed above, *supra* Section III, the initiation of neglect proceedings are

28

insufficient to establish a constitutional violation here. "There can be no municipal liability without an underlying constitutional violation." *Doe v. Levittown Pub. Sch. Bd. of Educ.*, No. 23-cv-08334, 2025 WL 317548, at *5 (E.D.N.Y. Jan. 28, 2025); *see also Demosthene v. City of New York*, 831 F. App'x 530, 534 n.3 (2d Cir. 2020) ("[I]n light of the absence of an underlying constitutional violation, the district court correctly dismissed the claim against the City pursuant to *Monell* . . . ."); *Maco*, 2016 WL 4028274, at *6 (holding plaintiff's *Monell* claim failed because plaintiff had not established an underlying constitutional violation). Accordingly, plaintiffs have not alleged a deprivation of a constitutional right as is required to state a claim against a municipality pursuant to *Monell*.

### B. Plaintiffs have not established a failure to train.

Plaintiffs' claim for municipal liability in their complaint also alleges that the city is liable for "inadequate . . . training and supervising" of its employees, and that City agencies "failed to properly train its employees and defendant City was aware[.]" AC ¶ 51. A municipality's "culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 59 (2011). Municipal liability for failure to train arises where a plaintiff demonstrates that the municipal's failure to train its employees constitutes deliberate indifference to the rights of persons with whom the untrained employees come into contact. *Id.* at 61. "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Id.* at 62. A Section 1983 claim "for deliberate indifference by a municipality is not sustainable where its failure is attributable to mere negligence rather than to conscious choice." *Outlaw v. City of Hartford*, 884 F.3d 351, 379 (2d Cir. 2018).

Where a plaintiff alleges individual misconduct, but does not show, for example, repeated complaints of civil rights violations or a pattern of unlawful conduct by unsupervised or untrained employees, a claim for municipal liability based on failure to train or supervise will fail. *Id.* at 372–73 (to proceed on deliberate indifference theory plaintiff must show the need for better supervision was obvious through, for example, repeated complaints). Here, plaintiffs' allegation of failure to train is not borne out in the evidence. Plaintiffs have failed to show a pattern of unlawful conduct or repeated complaints of civil rights violations that could tend to show a failure to train that rises to the level of deliberate indifference. Moreover, even if plaintiffs were able to establish a failure to train or supervise employees, they have failed to demonstrate that this failure resulted in a violation of their constitutional rights.

i.    <u>Supervisory liability.</u>

To the extent that plaintiffs make a claim for supervisory liability that is distinct from their claim for municipal liability, this claim also fails. Plaintiffs' complaint brings a claim for "supervisory liability," that also alleges constitutional injuries because the "supervisory defendants" were "deliberately or consciously indifferent to the rights of others in failing to properly supervise or train their subordinate employees." AC ¶ 47.

While plaintiffs make conclusory assertions in their opposition to defendants' motion for summary judgment as to their claim for municipal liability, they make no arguments and present no evidence as to their claim for supervisory liability. Plaintiffs do not clarify, for example, which individual defendants are the "supervisory defendants," who their "subordinate employees" are, or provide any evidence as to failures to supervise or train those employees. AC ¶ 47; *see also* Pls. Opp'n.

As with municipal liability, where, as here, "there was no underlying constitutional violation, there is also no supervisory liability." *Raspardo v. Carlone*, 770 F.3d 97, 129 (2d Cir. 2014). Additionally, plaintiffs "may not assert a second set of identical claims premised on the same conduct under the label 'supervisory liability.'" *Martinez v. City of New York*, 564 F. Supp. 3d 88, 106 (E.D.N.Y. 2021). Here, plaintiffs claim for supervisory liability appears to be premised on the same conduct as their claims for direct liability against all defendants. *See* AC ¶¶ 46–48. Accordingly, summary judgment is warranted as to plaintiffs' claim for supervisory liability under Section 1983.

Therefore, plaintiffs' claims for municipal and supervisory liability fail.

## CONCLUSION

For the reasons stated above, plaintiffs' motion for summary judgment is **DENIED** and defendants' motion for summary judgment is **GRANTED.** The Clerk of Court shall enter judgment accordingly and close the case.

**SO ORDERED.**

　　　　　　　　　　　　　　　　　　　　　　　　___/s/ Natasha C. Merle___
　　　　　　　　　　　　　　　　　　　　　　　　NATASHA C. MERLE
　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge


Dated:　　　　March 24, 2025
　　　　　　　Brooklyn, New York

31